Shawn Woodall
13736743
P.O. Box 122952
San Diego, CA 92112-2952

FILED

SEP 17 2013

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                      DEPUTY

2254        1983

FILING FEE PAID
Yes____   No____
IFP MOTION FILED
Yes____   No____
COPIES SENT TO
Court____   ProSe____

United States District Court
Southern District of California

Shawn James Allen Woodall,      ) Case No. 13CV2231 H KSC
              Plaintiff,         )          Supplied by Clerk
v.                               )
County of San Diego, A           )
public entity; San Diego         ) Plaintiff's Verified Complaint
County Sheriff, William          ) For Declaratory Relief,
Gore; Dr. Earl Goldstein,        ) Monetary Damages, And For
County Sheriff's Medical         ) Preliminary And Permanent
Director; Barbara Lee,           ) Injunctive Relief
Medical Administrator;           )
Captain Daniel Pena,             ) Demand For Jury Trial
Facility Commander of the        )
San Diego Central Jail;          ) (42 U.S.C. section 1983
Captain John Doe Madsen,         ) Civil Rights Action)
Facility Commander of the        )
George Bailey Detention          )
Facility; Jane Doe Terry         )

Z, Medical Supervisor of the
San Diego Central Jail;
John Doe Deputy Sheriff
Fuller, San Diego Central
Jail; Does 1-25 inclusive,
                        Defendants.

Plaintiff Shawn James Allen Woodall Alleges as follows:

## I. Introduction

This is a verified civil Rights complaint for
declaratory relief, monetary damages, and for
preliminary and permanent injunctive relief brought
forth from the Results of the defendant's unlawful,
unconstitutional and tortious conduct while the Plaintiff
was incarcerated at the San Diego Central
Detention Facility and the George Bailey Detention
Facility. The legal rights of the Plaintiff, Shawn
James Allen Woodall, were violated by defendants
County of San Diego, a public entity; the San Diego
County Sheriff, William Gore; Doctor Earl
Goldstien, County Sheriff's Medical Director;
Barbara Lee, Medical Administrator; Captain
Daniel Pena, Facility Commander of the San Diego
Central Jail; Captain John Doe Madsen, Facility
Commander of the George Bailey Detention Facility;
Deputy Sheriff John Doe Fuller and Jane Doe Tracy Z, Medical Supervisor

2.

of the San Diego Central Jail; And Does 1-25, inclusive, And Are either additional medical personel of the San Diego Jail System and/or Deputy Sheriff of the San Diego Sheriff's Department. Plaintiff will Amend This verified complaint to Allege their true NAMES and capacities when fully and finally Ascertained. Plaintiff is informed and believes, And thereupon alleges, That each fictitiously named defendant is legally responsible in some manner for the deprivation of Rights and occurences herein alleged, and that Plaintiff's injuries and damages As herein Alleged were proximately caused by the conduct of such defendants.

## II. Jurisdiction And Venue

1. This is A civil Rights Action under 42 U.S.C. section 1983 to Redress the deprivation under color of state law of Rights, privileges And immunities guaranteed by the Eighth And Fourteenth Amendment to the United States Constitution; Article I, Section 17 And Article I, Section 24 of the California Constitution; and VARIOUS provisions of Rights violated under the laws of The State of California As set forth in the California Tort Claims Act.

2. This Court has original subject matter

- 3 -

jurisdiction pursuant to 28 U.S.C. sections 1331, 1343(a)(3) and 42 U.S.C. section 1983. This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. section 1367.

3. This Court has jurisdiction over the Plaintiff's declaratory relief pursuant to 28 U.S.C. sections 2201, 2202 and Rule 57 of the Federal Rules of Civil Procedure. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. sections 2283, 2284 and Rule 65 of the Federal Rules of Civil Procedure.

4. Venue is proper in the Southern District of California under 28 U.S.C. section 1391(b)(2) because the events giving rise to the claims occurred at the George Bailey Detention Facility and the San Diego Central Jail, in the Southern District of California.

## III. Order To Show Cause And Preliminary Injunctive Relief

5. In addition, Plaintiff is filing simultaneously an Order To Show Cause For A Preliminary Injunction. The request is for the above Named defendants to release the Plaintiff with the New Sunmark wheelchair the Plaintiff is presently using and has been advised by many

.4.

orthopedic doctors and surgeons from UCSD Medical Center that the Plaintiff will need upon his upcoming release anticipated to be on or about October 10, 2013. This request is made pursuant to the Armstrong v. Davis, No. C94-2307CW, Remedial Plan Section IV. F. 3 (N.D. Cal. January 3, 2001)(holding that indigent inmates who cannot afford a medical appliance such as a wheelchair shall be provided one at state expense if a prisoner is prescribed the appliance by a doctor; Thus, the prisoner shall be authorized upon release to take any prescribed health care appliance with him). This request is also made pursuant to the Ninth Circuit holding in Armstrong v. Schwarzenegger, 622 F. 3d 1058 (9th Cir. 2010)(holding that the state cannot avoid its obligations to provide accomodations to disabled inmates by contracting with county jails to house those prisoners).

b. The Plaintiff in this case is a state prisoner who is forced by the contracting of the State of California with local jails to house prisoners under Assembly Bill 109 that are nonviolent, nonserious, nonsex offenders in order to comply with the prisoner release order upheld by the United States Supreme Court in Brown v. Plata, No. 09-1233, 563 U.S. ___ (2011). Under Armstrong and the case of the Remedial Plan in Clark v. California,

No. C96-1486 FMS (N.D. Cal. Mar. 1, 2002), aff'd 123 F.3d 1267 (9th Cir. 1997); The defendants in this case can seek reimbursement from the State of California for the cost of the Summock wheelchair the Plaintiff is currently confined to possibly for the rest of what life the Plaintiff has left as a terminally ill inmate.

7. In Addition, the Plaintiff will also be seeking an order for preliminary injunctive relief that the Plaintiff be released with a 60 day supply of all medications he is presently prescribed: Senemet 25/100mg 2 x's daily; Requip 1mg 3x's daily (both for Parkinson's Disease treatment); Gabapentin 1200mg 3x's daily (for Neuropathy pain in Plaintiff's feet caused by the Parkinsons); Klonopin 1mg 3x's daily (for seizure disorder and help assist with Parkinsons related tremors); MS Contin 30mg 3x's daily (for extreme pain the Plaintiff is in caused by the delay in treating a fractured left foot - called a Lisfranc fracture - see Exhibits 2 and 6, for over six to seven months from the February 23, 2013 incident, which is the subject of this lawsuit); Zoloft 150 mg once daily (for the depression the injury has caused the Plaintiff for being left untreated for so long); and Vistaril 150 mg at bedtime (to help the Plaintiff sleep as he is unable to sleep properly due to Nightmares of the incident and even being forced

by the defendants to walk on a severely fractured foot they knew required immediate surgery - which they failed to provide - As the defendants in this case also do not supply a prisoner being released from their custody any medications except psychotropic medication for only 10 days. The Plaintiff make his request to this Court pursuant to Title 15 California Code of Regulations Section 3355(d) (www.calregs.com); and Wakefield v. Thompson, 177 F.3d 1160, 1164 (9th Cir. 1999)(state must provide outgoing prisoner who requires medication with supply sufficient to last until he or she can obtain new prescription)

## IV. The Plaintiff Is A Prisoner Who Is In Immediate Danger Of Serious Physical Danger And Needs This Courts Immediate Intervention Due To His Serious Medical Needs

8. The Plaintiff in this case is NOT represented by competent legal counsel, but the Plaintiff does have a degree in paralegal studies from an accredited college and believes he will be able to Adequately represent himself in this case if the Court Allow the Plaintiff to proceed in forma pauperis. If the Court does not grant IFP in this case the Plaintiff will more than likely

7.

have to have his left foot amputated' it released again with no wheelchair on the endurance of the pain will lead to suicide. The Plaintiff will show herein through this verified complaint that the Plaintiff in this case is in immediate danger of serious physical injury warranting this Court's intervention and the Granting of IFP status pursuant to the Clause stated in 28 U.S.C. section 1915(g).

9. The Plaintiff respectfully acknowledges and does not dispute that back in 2000 he received "three strikes" in this Court by filing Civil Rights Complaints under 42 U.S.C. section 1983 that were frivolous, malicious or failed to state a claim under 28 U.S.C. section 1915(g). On the other hand, 1915(g) does have an acception that authorizes this Court to Grant the Plaintiff IFP status only if the Plaintiff sufficiently alleges in the Complaint that the prisoner is in immediate danger of serious physical injury. See ANDREWS v. CERVANTES, 493 F.3d 1047 (9th Cir. 2007).

10 The Plaintiff alleges that he is in immediate danger of serious physical injury as he is likely to be released on or about October 10, 2013 to the San Diego community with no funding to purchase a wheelchair for a Lisfrane fracture that occurred in the defendants custody and control on Saturday, February 23, 2013.

The Plaintiff was not seen by an orthopedic surgeon for four days, Tuesday, February 27, 2013 at the UCSD Medical Center and sat in a cell in extreme pain and suffering. The injury happened at the George Bailey Detention Facility ("GBDF") as the Plaintiff who has Parkinsons and seizure disorders had a lower bunk, lower tier chrono that was issued by a contracted UCSD physician who comes to GBDF to see inmates. The defendants ignored that chrono and forced the Plaintiff to sleep on the top bunk which this Court has found the top bunks at GBDF to be 7ft in height. See Patterson v. County of San Diego, 2011 U.S. Dist. LEXIS 7077 (S.D. Cal. January 25, 2011) (describing in order that GBDF top bunks were 7ft in height from the concrete floor to the bunk itself). The Plaintiff's repeated requests for a lower bunk in compliance with the doctors chrono for a lower bunk was repeatedly ignored or denied by the defendants. When the Plaintiff submitted a Grievance over the matter out of fear of falling - the Grievance's were deemed to be a "non-grievable matter, and was denied by responding to the Grievance as an inmate request. See Exhibit 2 "This Box For Official Use Only" at bottom of Grievance Form.

11. The orthopedic surgeons ordered the

defendants to bring the Plaintiff back for surgery on his Lisfranc Fracture in 7 days on "1st Available" Appointment. The defendants did not comply with the surgeons orders as the apparently did not want to pay for the cost of surgery.

12. The Lisfranc joint, represents the articulation between the midfoot and frontfoot, is composed of 5 tarsometatarsal ("TMT") joints. The Lisfranc contains multiple bones in the middle part of the foot.

13. The Lisfranc joint complex transfer the forces generated by the calf muscles to the front portion of the foot while walking. The reason for the urgent follow-up with the orthopedic surgeon in the UCSD Foot Clinic Department as a "1st Available" appointment ordered on February 26, 2013 by Dr. Jorge A. Fernandez, M.D., and Dr. John Henderson, M.D., diagnosed the Lisfranc fracture and recommended immediate surgery because this type of fracture results in permanent disability, and possible foot amputation, if not operated on immediately. The defendants decided to save the County of San Diego money and did not follow any of the surgeons orders.

14. Instead, the decision was made by the defendants to leave the Plaintiff in a

-10-

Wheelchair from February 27, 2013 until his release date to probation on April 15, 2013. The Plaintiff continued to argue with the defendants in that he knew he needed surgery. These pleas and arguments fell on deaf ears. The Plaintiff was never taken back to UCSD orthopedic clinic to have surgery as order by the above doctors, and again on March 16, 2013 by Dr. Lucius Pomerantz, M.D., and the defendants were even ordered by the Honorable Desiree Bruce-Lye of the San Diego Superior Court stating "The docket will reflect that the Sheriff is to get Mr. Woodall the recommended care Asap." See Exhibit 4 page 3. The defendants still did nothing but leave the Plaintiff in a fiberglass cast and a wheelchair where the Plaintiff's foot then became a "deformity." (quoting from UCSD Medical Records).

15. The Plaintiff had no money and no family. The defendants knew this.

16. The Plaintiff's fiancé, Shannon Lee Wrenn, passed away on April 18, 2012 while the Plaintiff was in custody of the defendants and the defendants knew this to. Due to the accidental and unexpected death of the Plaintiff's fiancé he had lost everything and had no support system upon release.

17. On April 15, 2013 the defendants removed the Plaintiff's fiberglass cast, took back the wheelchair, and the defendant's knew the Plaintiff had a no weight bearing ("NWB") order in his medical records and they ignored the NWB orders Also when the took away the wheelchair.

18. On said date above, the defendants forced the to walk on a severely fractured foot that had not healed and needed surgery. The Plaintiff was only able to walk 10-15 feet at a time before collapsing and screaming out in severe pain. The Plaintiff was given no medication by the defendant upon his April 15, 2013 release.

19. The pain and suffering was so bad from walking on a severely fractured foot that the only way the Plaintiff was able to get around in short distances was by crawling on his hands and knees like a dog.

20. The Plaintiff decided to violate his probation on purpose. After riding the trolley to the last San Ysidro stop, the Plaintiff cut off his probation ankle monitor and then attempted to turn himself in to the United States Customs Department who took the Plaintiff into a back processing room. After several hours - even though the Plaintiff told

- 12 -

Customs Officers he had cut off his probation leg monitor and had failed to report to probation; the Customs Officers told the Plaintiff there was nothing they could do for him and escorted the Plaintiff out of the booking and processing area at the International San Ysidro Border.

21. The next morning, the Plaintiff was in so much pain from walking on the fractured foot that he came to the San Diego Central Jail and told a Deputy Sheriff by the last name of Fuller that he (the Plaintiff) was in violation of his probation by cutting off his probation leg monitor and failing to report to his probation officer. This admission alone authorized Deputy Fuller - a sworn officer - to take the Plaintiff into custody. The Plaintiff waited an hour or so at the San Diego Central Jail where the Plaintiff voluntarily "turned himself in" on the probation violation. After an hour or more of waiting, Deputy Fuller told the Plaintiff there was nothing he could do for him in which the Plaintiff was turned away from custody although Deputy Fuller had probable cause to arrest the Plaintiff under California Penal Code section 1203.2 (a); A statute the Plaintiff was very familiar with and

even cited it to Deputy Fuller. See Exhibit 7,
People v. Woodall, 216 Cal.App.4th 1221 1157
Cal.Rptr. 3d 220, 225; see also page 223 (the
court of appeal discussing the Plaintiff needing
medication for his terminal illness which have
costs around $1,000°°.) Deputy Fuller still
refused to arrest the Plaintiff.

22. The Plaintiff went to seven different
hospitals and two medical clinics from the
April 15, 2013 release date and his arrest by
San Diego Police Department on May 28, 2013
in front of the Salvation Army; That is
where the Plaintiff slept in front of every
night he was free because he only had to
make it 10·15 feet to inside the Salvation
Army in the mornings and at night so he
could eat. On the weekends the Plaintiff
went hungry because he had no wheelchair and
was unable to walk the distance to the other
homeless shelters that fed on the weekends due
to the Salvation Army being closed on the
weekends.

23. The only way the Plaintiff was able to
make it to seven hospitals and two
clinics trying to get surgery on his foot
with absolutely no insurance coverage was
by literally crawling on the ground like a dog;
by illegally hoping the trolley to Grossmont and

-14-

Alvarado Hospitals; one clinic was a mobile
unit parked close by to where the Plaintiff
slept; and by ambulances. It was the
worse experience, most humiliating experience,
the most painful experience, the Plaintiff
has ever had to deal with in his 41 years
of life. No hospital would provide the surgery
Although the doctors all agreed that the
Plaintiff foot needed surgery really bad and
there was major damage to the Lisfranc joint
and all five metatarsals became broken and
displaced at the base.

24. After return to custody and the
Plaintiff demanding the surgery that should
have happened before his release two things
have happened.

25. On July 15, 2013, the Plaintiff was taken
to the UCSD Orthopedic clinic where the
Plaintiff met with orthopedic surgeon Alexandra
Kay Schwartz, M.D., who had new x-ray's
taken. After the x-ray's were finished,
Dr. Schwartz stated that there was real
significant damage to the left foot and
she was going to have to reconstruct the
entire foot with metal plates and pins.
She also stated that the Plaintiff may never
walk more than a few feet and would be
bound to a wheelchair for life.

.15.

26. Dr. Schwartz informed the Plaintiff, that she wanted to order a New CT-Scan before the surgery.

27. Between the February 23, 2013 incident and April 15, 2013 release date, the defendants would schedule surgery and when that surgery date came up the defendants always used the excuse of "transportation problems" when Defendants County of San Diego and San Diego County Sheriff William Gore must have a fleet of Department vehicles between 500-1000 or more. Yet, every time, the defendant's alleged "transportation problems" with the last surgery date set for April 16, 2013 - one day After the Plaintiff was released from custody to probation.

28. Once again, Dr. Schwartz ordered a stat CT-Scan which was supposed to be done on July 17, 2013. The defendant's again alleged "transportation problems" and did not get the Plaintiff back for the CT-Scan of the left foot until August 1, 2013. That was the last thing done to date As of the filing date of this civil Rights complaint.

29. Dr. Schwartz and her surgery team of other doctors did a COMPARISON study of the Plaintiff's February 26, 2013 x-ray's and CT-Scan which showed At that time metatarsal 1 and 2

-16-

were broken at the base and would need surgery to fuze the metatarsals 1 and 2 back to the base. There was a 2mm widening in the Lisfranc joint.

30. The Plaintiff's new x-rays and CT scans show that now all five metatarsals are broken at the base with a 3mm widening in the Lisfranc joint with displacement of the TMT joints; and that the Plaintiff's foot has not healed at all since the original fall on February 23, 2013. Dr. Schwartz noted that the Plaintiff needed immediate surgery to prevent further damage or even possible foot amputation from not staying NWB as ordered.

31. The Plaintiff has thought about being released again without any preliminary injunctions issued by this Court. The Plaintiff is afraid of losing his foot. The Plaintiff remembers people laughing as he was forced to crawl on the concrete sidewalk due to the extreme pain he was in and the fact the foot was swollen, cold to the touch, and he had no sensation when he touched his foot and toes.

32. The stress of release coming up in less than 30 days has caused the Plaintiff severe depression and the thoughts of suicide as he spent a day in a safety cell for suicidal inmates and told the psychiatrist it was because of the pain in his foot and the

fear of being homeless, injured with no way to
move around, no way to make a living
anymore being crippled for life.

33. This Court is the Plaintiff's only resort
to prevent further injury to his self by
the Court Granting IFP and issuing an OSC
As to why the preliminary injunctions should
Not be Granted to protect the Plaintiff from
immediate (possibly October 10, 2013) danger of
serious physical injury because as this verified
complaint shows - the defendant's have already
placed the Plaintiff in immediate danger of
serious physical injury when they released
the Plaintiff without a wheelchair and
without any medications warrants this
Courts intervention by the Granting of the
Plaintiff's Motion To Proceed In Forma
Pauperis And setting A hearing as soon as
possible - before October 10, 2013 - so the
issue of being released with the Sunmark
wheelchair he is currently in and the issue
of A sufficient supply - 60 day supply - of all
medications can be ordered by this Court by
Way of Grant the preliminary injunctions that
one before this Court.

34. The Plaintiff prays that this Court Grant
him IFP status in this case finding immediate
danger of serious physical injury to the

Plaintiff if IFP is not granted under the exception clause of 28 U.S.C. section 1915(a).

35. The Plaintiff also prays that the Court Grant both preliminary injunctions while the Court under the <u>Causes of Action</u> section proceeds forward.

## V. Parties

36. Plaintiff: This verified complaint alleges that the civil rights of Plaintiff, Shawn James Allen Woodall, who presently resides at 1173 Front Street, San Diego, CA 92101, were violated by the actions of the below named individuals. The actions were directed against Plaintiff at the George Bailey Detention Facility and the San Diego Central Jail on February 23, 2013; February 27, 2013 and April 15, 2013 to the present filing date of this verified complaint.

Defendants:

37. Defendant County of San Diego ("County") was and is a government and public entity operating within the State of California. This defendant is sued in its individual and official capacity. The defendant was acting under color of law as it was and is an incorporated public entity, duly authorized

-19-

And operating under the laws of the State of California. At all times herein mentioned, Defendant County possessed the power and authority to adopt practices and policies, and to prescribe rules, regulations and operations within the San Diego County Sheriff's Department. This includes the practices and operations within the San Diego County jails, which are managed, controlled and operated by the San Diego County Sheriff. As Thomas L. Montgomery, County Counsel by and through Dana L. Begley, Deputy County Counsel has explained that "the Sheriff's Department is part of the County of San Diego, not a seperate, or suable, public entity. A lawsuit against the Sheriff's Department is actually a lawsuit against the County." See Exhibit 3, Letter dated April 11, 2013, from the County of San Diego, Office of County Counsel, by Deputy County Counsel Dana L. Begley.

38. Defendant William Gore, resides in San Diego County and is employed as the San Diego County Sheriff. This defendant is sued in his individual and official capacity. This defendant was acting under color of law as the Sheriff of San Diego County, State of California.

39. Defendant Dr. Earl Goldstien, resides in San Diego County and is employed as the County Sheriff's Medical Director. This defendant is sued in his individual and official capacity. This defendant was acting under the color of law as an employee of the County of San Diego.

40. Defendant Barbara Lee resides in San Diego County and is employed as a Medical Administrator. This defendant is sued in her individual and official capacity. This defendant was acting color of law as an employee of the County of San Diego.

40. Defendant Daniel Pena resides in San Diego County and is employed as a Captain of the San Diego Sheriff's Department and Facility Commander of the San Diego Central Jail. This defendant is sued in his individual and official capacity. This defendant was acting under color of law as an employee for the County of San Diego.

41. Defendant John Doe Madsen resides in San Diego County and is employed a Captain of the San Diego Sheriff's Department and Facility Commander of the George Bailey Detention Facility. This defendant is sued in his individual and official capacity. This defendant was acting under color of law as an employee

- 21 -

of the County of San Diego.

42. Defendant Jane Doe Terry Z. resides in the County of San Diego and is employed as Medical Supervisor of the San Diego Central Jail and is a Registered Nurse. This defendant is sued in her individual and official capacities. This defendant was acting under color of law as an employee of the County of San Diego.

43. Defendant John Doe Fuller resides in the County of San Diego and is employed as a Deputy Sheriff at the San Diego Central Jail. This defendant is sued in his individual and official capacity. This defendant was acting under color of law as an employee of the County of San Diego.

44. Defendants Does 1-25 inclusive, reside in the County of San Diego and are employed as Registered Nurses at the San Diego Central Jail who are responsible for scheduling prisoners for surgery appointments with UCSD Medical Center; Registered Nurses at the George Bailey Detention Facility who are responsible to summons a doctor when a prisoner breaks a foot and for scheduling prisoners for surgery appointments with UCSD Medical Center; Licensed Vocational Nurses at the George Bailey Detention Facility who are responsible for correcting in medical

22.

New medication orders from UCSD Medical
Center increasing a prisoners pain
medications; and Transportation Deputy
Sheriff's and their Supervisors from Corporal,
Seargent, Lieutenant, Captain and the
Undersheriff that are responsible for
coordinating schedules for surgery with
all Registered Nurses who schedule surgery
appointments with orthopedic surgeons at
UCSD Medical Center. These defendants are
sued in their individual and official capacity.
These defendant Are Acting under color of
law an employees of the County of San
Diego.

45. Plaintiff is informed and believes and
thereupon alleges that, at all relevant times
herein, each defendant was completely
dominated and controlled by his co-
defendant, and each was the Alter-ego
of the other.

46. At all material times, the above named
defendants and DOES 1-25, who were
their agents, officers, servants, and/or
employees, were acting within the course and
scope of their employment and, therefore,
were acting under color of authority.

47. Plaintiff is informed and believes and
thereupon alleges that, at all time relevant

herein, defendants and each of them,
And their agents, employees, and supervisors
Authorized, condoned and Ratified the
unlawful conduct of each defendant and
each other.

48. Wherever Reference is made in this
verified Complaint beginning from page 1-
24 and thereafter; any act by a Defendant
of Defendants, such Allegations and reference
Shall Also be deemed to mean the acts
And failure to Act of each defendant
Acting individually, jointly and severally.

49. The defendants County of San Diego
or "County", William Gore or "Sheriff", Dr.
Earl Goldstien, Barbara Lee, Daniel Pena,
John Doe Madsen, Jane Doe Terry Z, Deputy
Sheriff Fuller, and All DOE defendants Are
Referred to collectively throughout this verified
Complaint as "defendants" from page 1,
Section I. Introduction until or through to
Plaintiff's Jury Demand at the very last
page of this verified Complaint.

VI. Exhaustion of Administrative Remedies

50. The Plaintiff Shawn James Allen Woodall,
hereinafter "Plaintiff WOODALL" or "Plaintiff", has
pursued And fully exhausted All Available Administrative

Remedies with the San Diego Sheriff's Department as required by 42 U.S.C. section 1997e and the United States Supreme Court holding in Booth v. Churner, 532 U.S. 731 (2001) before filing this lawsuit. The Sheriff's Department has a three tier administrative remedy or grievance process. The first response to the Plaintiff's Administrative Remedy seeking monetary and other relief was denied by Sergeant Richard North. The second response was denial of the appeal of Sgt. North's denial by Acting Administrative Lieutenant Rodrick Smith. The third and final response was denial of the Acting Administrative Lieutenant's Rodrick Smith's response to the Facility Commander. Acting Facility Commander Jerry Hannis denied that appeal of the administrative remedy process which fully exhausted all available administrative remedies within the Sheriff's Department. See Exhibit 1.

51. A government claim was also filed, which was denied on May 22, 2013. and included the notice of medical malpractice under California Code of Civil Procedure section 364(a). Accordingly, the Plaintiff proceeds with this action.

## VII. Summary of Plaintiff's Case

Plaintiff is informed and believes and thereupon alleges as follows:

52. This action is for the violation of the Plaintiff's Rights secured by the United States and California Constitutions. Specifically a violation of the Plaintiff's

Rights to be free from Cruel and Unusual Punishments secured by the Eighth Amendment made obligatory upon the State of California, County of San Diego by virtue of the Fourteenth Amendment to the United States Constitution.

53. This action is also for the violation of the Plaintiff's rights to be free from Cruel and Unusual Punishment secured by Article 1, Section 17 and Article I, Section 24 of the California Constitution as Authorization to sue the defendants under violations of the United States and California Constitution is set forth in the California Bane Act, California Civil Code section 52.1, in which this Court has supplemental jurisdiction under 28 U.S.C. section 1367.

54. This action is also for violations for the Plaintiff's right to be free from the negligent acts or omissions of the defendants; the Plaintiff's right to be free from suffering medical malpractice at the hands of the defendants as set forth under California Government Code sections 844.6(a); 844.6(d) and 845.6 prosecuted under the California Tort Claims Act, in which this Court has supplemental jurisdiction under 28 U.S.C. section 1367.

55. On February 23, 2013, Plaintiff WOODALL, who has Parkinson's Disease and a seizure disorder, lost his balance as his legs gave out due to the Parkinsons, and fell 7 feet to the concrete floor from the top bunk in his cell. The Plaintiff fractured

his left foot. Following Plaintiff's injury, the defendant's violated Plaintiff's Eighth Amendment Right to be free from Cruel and Unusual Punishments; the Plaintiff's rights under Article I, Section 17 and Article I, Section 24 to be free from Cruel and Unusual Punishment, by deliberately delaying, denying and failure to summons treatment and surgery for the serious medical needs of his severely fractured left foot.

56. The defendant's delay in medical care for the Plaintiff's serious medical needs resulted in the defendant's preventing Plaintiff from seeing a medical doctor for approximately four days after the occurrence of the broken left foot. The doctor from UCSD under contract with defendant County of San Diego ordered the Plaintiff to be immediately taken to UCSD Medical Center Emergency Department

57. The fracture occurred because of the defendants' negligence and deliberate indifference to the Plaintiff's serious medical needs in placing the Plaintiff in the top bunk, having known that the Plaintiff had a history of Parkinson's Disease and a seizure disorder with a medical directive to the defendants known as a "Chrono" to not place or assign the Plaintiff in a top bunk. The medical directive was ignored along with the Plaintiff's complaints that he was prone to fall and could seriously hurt himself if he fell from the 7 foot in height top bunk. This is

-27-

Not the first time the defendants have been sued in this Court by inmates who had the potential to fall from the 7 foot high top bunks at the George Bailey Detention Facility ("GBDF") - the Detention Facility the Plaintiff fell from the top bunk and was severely injured with a fractured left foot. See Patterson v. County of San Diego, 2011 U.S. Dist. LEXIS 7077 (S.D. Cal. Jan. 25, 2011).

38. Parkinson's Disease causes balance problems, lack of coordination and involuntary seizures. The disease is terminal as it progresses. There is no known cure for the disease that affects approximately 1 in 4,000,000 people. The defendants were aware of this.

39. As a result, the fracture was exacerbated, resulting in permanent, life long injury to his foot. The deliberate indifference to Plaintiff's serious medical needs continues to the present. The required immediate surgery within 7 days of the fracture still has not been performed. It has now been approximately 7 months and counting as the defendant's continue to be deliberately indifferent to the Plaintiff serious medical condition.

## VIII. General Allegations

60. On February 23, 2013, Plaintiff WOODALL

-28-

WAS AN inmate serving A state prison sentence in "local prison" in the San Diego County Jail System, operated and controlled by the defendant County and defendant Sheriff William Gore, hereinafter "Sheriff Gore". Mr. Woodall was confined at GBDF at 446 Alta Road, San Diego, California 92158. This facility is operated and controlled by defendant John Doe Madsen, Facility Commander of GBDF. The Plaintiff was assigned to Cell No. 3-113U - which is the upper bunk - despite the Plaintiff's protest of his chrono calling for an assignment to a lower bunk. The defendant's ignored the Plaintiff's protest alleging overcrowding due to the passage of California Assembly Bill 109 requiring nonviolent, nonserious, nonsex offenders to serve their terms of imprisonment in county jails which is now being referred to as "local prison".

61. Plaintiff has never been either a violent or dangerous prisoner and was always deemed low security by state and federal prison authorities. The Plaintiff was also deemed to be a model inmate in both state and federal prison as he only received one incident report in nine years of constant custody.

62. The Plaintiff has been diagnosed with Parkinson's Disease for 8 years. He has also had a Seizure disorder for 21 years. These diagnoses were well known to the defendants, and is well

documented in the Plaintiff's jail medical records. Plaintiff is currently taking Sesemet 25/100mg 2x's daily; Requip 1mg 3x's daily, and Klonopin 1mg 3x's daily for Parkinson's and his seizure disorder while currently in the defendant's custody. The disease adversly affects Mr. Woodall's Nervous system, including his balance and coordination.

63. Plaintiff WOODALL was directed by the defendants to sleep on the 7 foot tall top bunk in his cell. On February 23, 2013, the Plaintiff was coming down from the top bunk as directed by John Doe #1 Deputy and John Doe #2 Deputy for 10:00 p.m., Night Count which required the Plaintiff to have his inmate wristband scanned. The two John Doe Deputy defendants witnessed the Plaintiff fall from the top bunk And land on the concrete floor. These defendants began laughing And walked away continuing their count while not inquiring if the Plaintiff was injured or needed medical attention - despite the Plaintiff screaming out in pain And telling the defendants "I believe I just broke my left foot."

64. The Plaintiff's left foot hit a Steel table on the way down then the left foot landed on one of the Steel bolts which protrude vertically through the foundation of a circular, Steel seat. The Steel seat has a steel pillar running down to the concrete

-30-

floor. The foundation of the seat is secured to the floor with the vertical bolts, which protrude up from the ground, next to the pillar. Plaintiff's left foot was jammed in between the threads on one of the vertical bolts on the left side of the vertical steel pillar.

65. Plaintiff WOODALL experienced immediate, excruciating pain in his left foot. He called for help from the Sheriff Deputies by the Plaintiff's cellmate, David Johnson, screaming "mandown" which is an emergency call in jail when a prisoner is hurt. Mr. Johnson continued to scream "mandown in 113" and pushing the emergency box in the cell to notify the tower deputy defendant - John Doe #3 and John Doe Deputy #4 who failed to follow their duties under policies and procedures by answering the emergency box immediately. John Doe #1, a deputy defendant, black male, arrived at the Plaintiff's cell approximately two hours later after he had witnessed the fall and heard Mr. Johnson screaming "mandown cell 113." John Doe #1 took the Plaintiff to medical where he met defendant Jane Doe #1, the Nurse on duty who witnessed the Plaintiff discolored and swollen left foot with signs and symptoms of a broken foot, but defendant Jane Doe #1 failed in her duty to summons a medical doctor from UCSD who is on contract with defendant County.

66. Defendant Jane Doe #1 gave the Plaintiff

- 31 -

A bag of ice and Naprosyn and instructed defendant John Doe #1 to take the Plaintiff back to his cell. Mr. Johnson gave the Plaintiff the bottom bunk at that time.

67. A layperson without a medical license could have looked at the Plaintiff's foot and tell it was broken and that the Plaintiff was in need of immediate care for a serious medical need. The Plaintiff would not receive proper medical or see a doctor for approximately four days later and the fact that defendant Jane Doe #1, a nurse at GBDF gave the Plaintiff 1 Naprosyn tablet and 1 ice pack that night and did not schedule the Plaintiff to see a doctor until Tuesday, February 26, 2013 - does not amount for medical care and was a significant serious delay amounting to deliberate indifference to the Plaintiff's serious medical needs. See Loe v. Armistead, 582 F.2d 1291, 1296 (4th Cir. 1978)(22-hour delay in bringing prisoner to hospital for surgery for broken arm even though promptly seen by nurse and given medication).

68. The impact fractured Plaintiff's left foot in multiple place throughout the middle portion of his foot. The fracture is a Lisfranc fracture, which is a fracture of multiple bones in the middle part of the foot. The impact on Plaintiff's left foot caused a 2mm widening of the Lisfranc

joint, with a fracture at the base of the 1st
and 2nd metatarsal with multiple bone fragments
floating around in the Plaintiff's foot.

69. The Lisfranc joint complex in the foot has
many specialized bones, including metatarsal
bones, which stabilize the foot when walking.
These bones transfer forces generated by the
calf muscles to the front portion of the
foot while walking or running.

70. Absolutely no medical Attention was provided
by the defendants until Tuesday, February 26,
2013 at which time the Plaintiff was taken to
the UCSD Medical Center Emergency Room. On
that date, Dr. Jorge A. Fernandez, M.D., and
Dr. John Henderson, M.D., diagnosed Plaintiff
with the Lisfranc Fracture and recommended
surgery after looking at the injured left foot
through x-ray's and a CT Scan. The physician
directed the defendants to return Plaintiff
WOODALL for the "1st Available" Appointment at
the UCSD Foot Clinic Department. See Exhibit 2.

71. The reason that the physicians ordered
an immediate follow-up appointment was to
allow the swelling in the foot to go down for
surgery, and also because this type of
fracture results in permanent disability, and
high risk for possible foot amputation, if not
operated on immediately. The defendants would

schedule the Plaintiff's surgery Appointment then Always cancel the appointment on the day of surgery Alleging "transportation problems" always As, an excuse Although defendant County and Defendant Gore must have a fleet of 500 to 1,000 vehicles And a large staff of Deputy Sheriffs who could have made sure the Plaintiff made his UCSD surgery Appointment. But what it really came down to is the defendants did not want to pay the cost of the surgery despite the fact they were and are legally responsible to pay the cost of the surgery, medication, aftercare rehabilitation, And all medical appliances including a wheelchair.

72. On March 2, 2013 Plaintiff WOODALL filed one of Numerous San Diego County Sheriff's Department Grievances, hereinafter "Grievance", based upon the fact that the jail was denying him medical treatment and surgery on his foot even citing that he was suffering the unnecessary and wanton infliction of pain in violation of McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc). See Exhibit 3. Since that time Plaintiff has filed And exhausted the Grievance process

-34-

Two time over this delibecate indiffecence but the defendants now refuse to Answer Any more Grievance over this issue and has chilled the Plaintiff First Amendment Right to Freedom of Speech.

73. On March 16, 2013 Dr. Lucius Pomecante, M.D., who Again advised the defendants that Surgery was Necessary for Plaintiff's left foot Fracture. The defendants still took no action except leaving the Plaintiff in a wheelchair so that the Plaintiff's foot would become a "deformity" (quoting from the Plaintiff's Notes in his medical records written by many orthopedic surgeons and doctors.)

74. At A date unknown to the Plaintiff as of this filing, the Honorable Desiree Bruce-Lyle, Judge of the Superior Court of the State of California, County of San Diego, ordered defendant Sheriff Gore to immediately get the Plaintiff the surgery he Needed.

75. On March 21, 2013, the Plaintiff Appeared before Judge Bruce-Lyle Again. The Court Again ordered defendant Sheriff Gore to get the Plaintiff the medical care he Needed ASAP. The Plaintiff and his Counsel made a record to the Court, placing defendant County and defendant Sheriff Gore on Notice of the urgent Need for surgery of his left foot,

-35-

And informed defendant County and defendant Sheriff Gore of civil liability and violations of the Plaintiff's constitutional rights. The Court's order and the Plaintiff and counsels Notice fell on the defendants deaf ears. See Exhibit 4.

76. On March 24, 2013 and March 29, 2013 Plaintiff WOODALL gave further notice to defendant Sheriff Gore that the court had ordered "immediate medical care for the broken left foot."

77. On April 3, 2013, a letter was hand delivered to the San Diego County Counsel emphasizing the need for immediate medical treatment and surgery. Plaintiff's counsel provided a history of the event, the failure to perform surgery and the Order of the Court directing surgery. The defendant County was advised that Plaintiff was scheduled for release from custody on April 15, 2013. See Exhibit 6.

78. On April 15, 2013 the defendants took away the Plaintiff's wheelchair he had been prescribed by a doctor from UCSD who is contracted with defendant County to provide medical care for prisoners. The Plaintiff's foot was not healed, he had not had the required surgery, he had a no-weight bearing

-36-

("NWB") Order from many surgeons and doctors from UCSD Medical Center, and the Plaintiff was unable to walk more than 10-15 feet every few hours due to the inability to walk and the extreme pain caused from walking on a fractured foot - that the defendants knew was fractured before they took the wheelchair away.

79. The Plaintiff begged and pleaded with the defendants to please allow him to use the wheelchair until he could figure something out. The defendants said "NO". The Plaintiff explained he was homeless, had no friends or family to help him obtain a wheelchair, and begged and pleaded with the defendants for some compassion and not force the Plaintiff to walk on a severely fractured foot. The defendants again said "NO".

80. The Plaintiff was in the wheelchair from February 27, 2013 until forced out of the wheelchair on to the streets on April 15, 2013 without money to purchase a wheelchair. Due to no surgery and being in a wheelchair so long the Plaintiff's left foot became - and still is - a "deformity".

81. Because there had been no surgery on the Plaintiff's fractured foot his medical condition worsened. The Plaintiff was in so much pain he vomited multiple times. The

-37-

Plaintiff's pain was so great that when he laid down to go to sleep at night - he did not fall asleep; Rather, the Plaintiff passed out from being in so much pain.

82. After his Release, the Plaintiff sought medical treatment for his fractured foot at seven hospitals and two medical clinics. The Plaintiff took public transportation to the hospitals until his money Ran out, then he either was forced to walk from downtown to Scripps Mercy Hospital - twice - on the Plaintiff would take an ambulance.

83. At one point the Plaintiff had been informed that his foot was so badly damaged from being forced by the defendants to walk on it when they took his wheelchair away; that UCSD doctors considered that the foot had become inoperatable. The Plaintiff was in excruciating pain - the worse pain he had ever been in in his 41 years of life. He even pleaded with the UCSD doctors to just cut his foot off so that the Plaintiff would not have to go through the continued pain of basically walking his own foot off.

84. The Plaintiff attempted to use crutches but gave that up after falling twice because of the Parkinson's Disease. The Plaintiff also tried to use a Cam Boot which is a boot used to

support the ankle. That worked for a couple
days, until the Plaintiff noticed a round hole
in his left foot caused by the Cam Boot. The
doctors said it was caused by the friction of
the broken bones floating in the Plaintiff's
foot rubbing up against the skin.

85. The Plaintiff had no money to fill the
prescriptions of pain medications ordered
by the Emergency Room doctors.

86. The Plaintiff had no money to pay for
the Surgery himself.

87. Because Plaintiff was in such excruciating
pain from standing and walking, he cut off
his ankle monitor and attempted to surrender
to two U.S. Customs Officers. After that failed,
he came to the San Diego Central Jail and attempted
to surrender to defendant John Doe Deputy
Sheriff Fuller, hereinafter defendant Fuller.
The Plaintiff advised defendant Fuller that
he had cut-off his probation ankle monitor,
which was a violation of probation giving
defendant Fuller full probable cause to
arrest the Plaintiff under Penal Code section
1203.2(a); and that Plaintiff was there to
"turn himself in".

88. An hour later defendant Fuller stated
he was not going to arrest the Plaintiff
and that Plaintiff was "free to go."

89. The Plaintiff walked back to the Salvation Army on 7th Street in downtown where the Plaintiff had been sleeping on the sidewalk outside so he only had to walk 10-15 feet twice a day inside the Salvation Army to get something to eat. The Plaintiff assumed he would just hopefully die there - as death, even suicide was contemplated by the Plaintiff do to sometimes having to go through the humiliation of crawling like an injured dog on his hands and knees to get inside and get something to eat at the Salvation Army. The Plaintiff had to endure the laughs, the stares, the indignity, of listening to comments of the public who did not understand or even care the Plaintiff was severely injured contemplating way to kill himself.

90. After Plaintiff's re-admission to the San Diego Central Jail on May 28, 2013, the Plaintiff immediately re-asserted his requests for medical treatment and surgery on his left foot.

91. On July 15, 2013, the Plaintiff was taken to see Dr. Alexandra Kay Schwartz, orthopedic surgeon at UCSD Medical Center Foot Clinic. Dr. Schwartz ordered an x-ray and then sat down with the Plaintiff and explained the extensive injury to the left foot and that she

- 40 -

was going to order a STAT (within 2-3 days) CT-Scan so she could get a better look at the Plaintiff's foot. Dr. Schwartz told the Plaintiff that according to the x-ray she was literally going to have to reconstruct the Plaintiff's left foot with plates and screws. Dr. Schwartz Also informed the Plaintiff that he will more than likely be confined to a wheelchair for life.

92. After more excuses by the defendants of "transportation problems" the Plaintiff finally made it back to UCSD Foot Clinic for the CT-Scan on his left foot.

93. UCSD orthopedic surgeon Dr. Schwartz and other doctors did a comparison study from the Plaintiff February 26, 2013 x-ray and CT-scan compared with the new x-ray and CT-Scan. The Plaintiff's foot has still NOT healed at all since the February 23, 2013 fall. Instead, the Plaintiff's foot is worse. The Plaintiff went from a 2mm widening of the Lisfranc joint to now a 3mm widening of the Lisfranc joint. The Plaintiff went from metatarsal 1 and 2 fractured at the base to metatarsals 1, 2, 3, 4 and 5 broken at the base and displaced. The obvious additional injury is from the defendants refusal to provide medical care, surgery and forcing the Plaintiff to walk on his fractured foot

that the defendants were advised over and over again of the dangers of this rare fracture which could lead to possible foot amputation.

94. The conduct of the defendants, in denying Plaintiff his medical care and forcing him to walk on a foot they knew needed surgery, was ordered NWB, and was severely fractured, And releasing him without a wheelchair and needed pain medications was clearly intentional and deliberate. It was outrageous and shocks the conscience. It violated Plaintiff's rights under the Eighth and Fourteenth Amendments to the United States Constitution. It violated Plaintiff's rights under Article I, Section 17, and Article I, Section 24 Cruel and Unusual Punishment Clause pursuant to the California Constitution which is herein prosecuted under the California Bane Act, California Code of Civil Procedure section 52.1. It constituted Negligence due to the acts or omissions of the defendants and also constituted medical malpractice of the defendants under Government Code sections 844.6(a), 844.6(d), and 845.6 as the defendants knew or had reason to know that the Plaintiff was in need of immediate medical care and failed to take reasonable action to summons such

medical care which this standard before this Court is different than the federal "deliberate indifference" standard. See Lucas v. County of Los Angeles, 47 Cal.App.4th 277, 287-288, 290 (1996).

95. The Plaintiff's injury was so obvious that the knowledge of the need for medical care was implied. See Johnson v. County of Los Angeles, 143 Cal.App.3d 298, 316-317 (1983)(decendent was released from jail even though known to have suicidal tendencies).

96. At all times, the acts or omission of each named individual defendant were negligent, objectively unreasonable, intentional, wanton, willful, reckless, malicious, constituted medical malpractice and a deliberate indifference to Plaintiff's rights.

97. As a result of the foregoing, Plaintiff WOODALL has sustained permanent and life-long damage to his left foot. He will never be able to walk or run normally and more than likely will be confined to a wheelchair for what is left of his life in which the defendants destroyed the last bit of quality of life. Plaintiff has sustained severe pain and suffering, nightmares of walking on a fractured foot, PTSD, mental anguish, emotional distress, panic attacks, severe depression, and has had suicidal tendencies since the injury.

-43-

98. All of the above medical requests by Plaintiff, the orders of the Honorable Desiree Bruce-Lyle and the orders by the U.C.S.D. physicians have been deliberately ignored by defendants County of San Diego; San Diego County Sheriff, William Gore; Dr. Earl Goldstien, County Sheriff's Medical Director; Barbara Lee, Medical Administrator; Captain Daniel Penn, Facility Commander of the San Diego Central Jail; Captain John Doe Madsen, Facility Commander of the George Bailey Detention Facility; Jane Doe Terry 2, Medical Supervisor of the San Diego Central Jail; John Doe Deputy Sheriff Fuller, San Diego Central Jail; and DOES 1-25.

99. All of the above Exhibits are true and correct copies, and are incorporated by Reference to this Verified Complaint.

## IX. CAUSES OF ACTION

## Violation Of The Civil Rights Act Pursuant To 42 United State Code Section 1983
### (As to All Named Defendants)

Count 1: The following civil right has been violated: The Right To Be Free From Cruel And Unusual Punishments As Set Forth In The Eighth

-44-

Amendment Made Obligatory Upon The State Of California, County Of San Diego, By Virtue Of The Fourteenth Amendment To The United States Constitution Due To The Defendant's Deliberate Refusal To Treat The Plaintiff's Fractured Foot Which Amounted To Deliberate Indifference To The Plaintiff Serious Medical Needs And Further Forcing The Plaintiff To Suffer Unnecessary And Wanton Infliction Of Pain

100. The Plaintiff realleges and incorporates by reference paragraphs 1-99.

101. Case law and the Eighth Amendment to the United States Constitution make it clear that inmates are "custodians of the jailer," and as such they must be rendered proper and necessary medical treatment. This is especially true when the injury to the Plaintiff inmate was caused by the County of San Diego placing Plaintiff WOODALL in the top bunk.

102. The Plaintiff was in custody and control of the defendants, and each of them. He reasonably had to rely upon their medical treatment. The defendants were solely responsible for ensuring the Plaintiff received proper medical care and surgery for an injury that occurred while the Plaintiff was a sentenced prisoner to the defendant's custody.

-45-

103. The United States Supreme Court has held that the "deliberate indifference to serious medical needs of prisoners constitutes unnecessary and wanton infliction of pain," which is proscribed by the Eighth Amendment Cruel And Unusual Punishments Clause. Estelle v Gamble, 429 U.S. 97, 104 (1976) (emphasis added). The Supreme Court Also relied on Gregg v. Georgia, 428 U.S. 153, 173 (1976).

104. Between February 23, 2013 and the present, the defendants, and each of them have acted with deliberate indifference to Plaintiff's serious medical needs.

105. The defendants chose to not allow for surgery to take place on the Plaintiff. Instead, the defendants chose to release Plaintiff on April 15, 2013 without the surgery, and without the wheelchair.

106. The defendants not only forced the Plaintiff to walk on a known severely fractured foot; but also released the Plaintiff with no pain medication, no seizure medication, no Parkinson's medications, and no Neuropathy medications. This further caused the unnecessary and wanton infliction of pain due to the Plaintiff's Neuropathy is in his feet.

- 46 -

107. Immediate foot surgery was ordered by multiple physicians and an orthopedic surgeon at the time of injury on February 23, 2013.

108. Multiple follow-up medical directives were given to the defendants, and each of them, regarding the medical need for immediate surgery. The physicians' orders and directives went to the deputy and deputy chain of command at the defendant County and defendant Sheriff Gore.

109. Multiple written notices from the Plaintiff and his Counsel were given to the defendants, and each of them through the chain of command, regarding the need for immediate surgery.

110. The acceptable standard of treatment and care for Plaintiff WOODALL in the County of San Diego clearly included surgery. The foot surgery was available at the UCSD Medical Center and each time the Plaintiff's appointment for surgery came up the defendants canceled the date alleging "transportation problems" with the defendants who have a fleet of vehicles assumed by the Plaintiff to be 500 to 1,000 or even more.

111. Dr. Alexandria Kay Schwartz was the orthopedic surgeon who ordered surgery on

-47-

AN urgent basis (7-14 days) After the August 1, 2013 CT-SCAN WAS taken. The defendant continue to hold out on the surgery.

112. The defendants Are required to adhere to and follow medical directives And orders of the physicians At the U.C.S.D. Medical Center. U.C.S.D. Medical Center operates in conjunction with the defendant County to provide medical services for inmates. These physicians work for the County. All medical orders and directives were ignored by the defendants.

113. The defendants Are SWORN County officials And deputies and Are required to follow and uphold orders of the Superior Court of California, County of San Diego. Both Court orders to the defendants directing Plaintiff be provided necessary medical care were disregarded by the defendants.

114. The SERIOUS NATURE of the fracture And the NECESSARY treatment was stated clearly in the medical Reports, physician orders and Court orders to defendants County and Sheriff Gore. The defendants, and each of them, deliberately And purposely chose to disregard court orders And the medical directives of the physicians.

115. The defendants, and each of them,

-48-

Knew the Risks of harm to the Plaintiff's foot and body. They intentionally disregarded those Risks.

116. A foot is weight bearing, meaning that whenever the peson stands or walks, his weight is pushing down on the fractured bones. This downward pressure and continuous movement causes the bones to fracture and displace even more.

117. Plaintiff is 41 years old. He will have residual injuries and severe pain and suffering for his lifetime. He Also will likely be confined to a wheelchair for life.

118. When the Plaintiff was released from custody, he had the clothes he was wearing when Arrested and a few hundred dollars. He was unemployed and homeless. The defendants, each of them, possessed knowledge of this when the released the Plaintiff on April 15, 2013.

119. The defendant clearly understood that by releasing Plaintiff without surgery, and without a wheelchair, that the fracture in Plaintiff's foot would get worse As Dr. Alexandria Kay Schwartz, comparison study will prove.

120. When Plaintiff WOODALL could no

-49-

longer walk because of the excruciating
pain, he cut-off his ankle braclet. This
the Plaintiff did this on purpose from the gate
since the court would not allow the
Plaintiff to opt-out of probation And just
stay in "local prison" until he received surgery.
See Exhibit 4. The removal of the ankle
braclet and not reporting to probation
resulted in a probation violation Allegation
And the return to custody. The Plaintiff is
likely to be released from "local prison" on or
about October 10, 2013.

121. Upon Plaintiff's Re-Admission to
custody on May 28, 2013 Plaintiff Re-
Advised the defendants of the worsened
condition of the fracture.

122. The illegal And unconstitutional policies,
practices, statutes, ordinances, regulations,
customs, or usages, promulgated, sanctioned
And tolerated by the defendants, include, but
are not limited to:

   (1) Acting with deliberate indifference
to serious medical needs of the prisoner
Plaintiff which is proscribed by the Eighth
Amendment Cruel And Unusual Punishments
Clause to the United States Constitution
made obligatory upon the State of California,

- 50 -

County of San Diego, by virtue of the Fourteenth Amendment to the United States Constitution;

(2) Intentionally forcing upon the Plaintiff pain and suffering in violation of the Cruel and Unusual Punishment Clauses proscribed in Article I, Section 17, and Article I, Section 24 of the California Constitution and brought forth in this verified complaint under the California Bane Act, found in California Code of Civil Procedure section 52.1; This Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367;

(3) The negligent acts or omissions of the defendants and medical malpractice found in California Government Code sections 844.6(a), 844.6(d) and 845.6 which violates the provisions of the California Tort Claims Act; This Court has supplemental jurisdiction pursuant to 28 U.S.C. section 1367;

(4) Having knowledge of similar conduct by deputies and agents of the County and Sheriff Gore both before and after the February 23, 2013 fall from the top bunk, and refusing to enforce established administrative procedures to insure health and safety of sentenced prisoners in their custody;

(5) Refusing to discipline individual deputies and employees found to have committed similar acts of deliberate indifference to serious medical needs;

(6) Failing to adequately train and educate deputies in the application of medical care for serious medical needs;

(7) Failing to enforce the departments written regulations with respect to providing medical care to sentenced inmates in their custody and control with serious medical needs;

(8) Failing to adequately supervise the actions of deputies under the defendants' control and guidance;

(9) Encouraging and fostering a "code of silence" among the deputies and medical employees for the purpose of concealing the failure to care for serious medical needs of sentenced inmates in their custody and control;

(10) Failure to update their policies and procedures in accordance with existing federal and state case law with respect to constitutional and legal obligations set forth by the defendants to insure adequate medical treatment is immediately provided for inmates with serious medical needs.

123. By reason of the aforesaid policies, practices, statutes, ordinances, regulations, customs, or usages, Plaintiff rights under the Eighth and Fourteenth Amendments to the United States Constitution were violated.

124. By reason of the aforesaid policies, practices,

statutes, ordinances, regulations, customs, or usages, Plaintiff's rights under Article I, Section 17 and Article I, Section 24 of the California Constitution were violated and is brought forth under the California Bane Act, California Code of Civil Procedure section 52.1 And invoking this Court's jurisdiction pursuant to 28 U.S.C. section 1367.

125. By reason of the aforesaid policies, practices, statutes, ordinances, regulations, customs or usages, Plaintiff has suffered negligent acts, or omissions of the defendants, and has suffered medical malpractice at the hands of the defendants in violation of California Government Code sections 844.6(a), 844.6(d), and 845.6 and is a subsequent violation of the California Tort Claims Act and invoking this Court's jurisdiction pursuant to 28 U.S.C. section 1367.

126. As a result of the deliberate and intentional 7 months and continuous delay in treatment Plaintiff has sustained severe and permanent damage to his left foot and the Plaintiff is currently confined to a wheelchair 100% of the time when he is awake. The defendants have not even assigned the Plaintiff to a wheelchair accessible handicap cell making it even harder on the Plaintiff and is certainly

- 53 -

is a violation of the American with Disabilities
Act (42 U.S.C. section 12101 et.seq.) and the
Rehabilitation Act (29 U.S.C. section 701(b)(1)(r)),
and the defendants have "chilled" the Plaintiff's
repeated requests for an ADA approved handicap
cell but the defendants refuse to answer
the Plaintiff's Grievances over this matter.

127. All of the above conduct, policies,
practices, statutes, ordinances, regulations,
customs, or usages, were maintained,
encouraged, condoned and implemented by
defendant County and defendant Sheriff Gore,
by and through their supervisory personnel, and
DOES 1-25.

128. The actions or omissions described herein
were engaged in under color of state authority
and under color of law by the defendants,
including the named defendants, DOES 1-25,
and each of them.

129. All of the defendants, and DOES 1-25,
and each of them, authorized, condoned and
ratified the deprivation of constitutional
Rights, including their medical malpractice, by
their continuous pattern of intentional and
negligent conduct.

130. At all times relevant herein, all medical
staff working for the defendant County, and
the staff of the Sheriff's Department were

-54-

Acting within the course and scope of their employment.

131. The above stated unconstitutional policies, practices, statutes, ordinances, regulations, customs or usages, under color of law were a direct, legal and proximate cause of Plaintiff's damages. The defendant County and defendant Sheriff Gore are sued as a person, as well as, government entities. They are liable both as persons and entities in their official and individual capacities.

132. As a direct and proximate result of the unconstitutional actions by the defendants, and each of them, including DOES 1-25, and their agents, supervisors, managers and employees, Plaintiff was deprived of his rights under the Eighth and Fourteenth Amendments of the United States Constitution and the laws of the United States; Plaintiff was deprived of his rights under Article I, Section 17 and Article I, Section 24, of the California Constitution and the laws of the State of California. The defendants have violated the Civil Rights Act, 42 United States Code section 1983.

133. Plaintiff has and will continue to suffer damages resulting from these constitutional violations, negligence and medical malpractice, including severe pain and permanent disability

Resulting from the Lisfranc fracture complications.

134. Plaintiff's include, but are not limited to, pain and suffering, mental anguish, post-tramatic stress disorder, emotional distress, grief, sleeplessness, nightmares, loss of enjoyment of life, severe depression, manic attacks, depression, fear of further damage to his foot, fear of amputation of his foot, and loss of self-esteem from not being able to walk normally and being confined to a wheelchair for the remainder of his life. The defendant have knowingly and willfully destroyed what quality of life the Plaintiff has left due to his terminal illness and no amount of money or other relief can ever bring that back.

135. Plaintiff is also expected to incur special damages, including medical expenses and lost wages upon his release from custody on or about October 10, 2013.

136. Plaintiff has incurred and will continue to incur medical expenses for treatment by physicians, and other health professionals, along with other incidental medical expenses. Plaintiff recently graduated after years of hard study from Nursing and paralegal studies. As his plan was to work as a Legal Nurse Consultant and that profession pays out $150.00 to $250.00 per hour. This was going to assist the Plaintiff with paying off lawschool; thus, the

Plaintiff has incurred loss of earnings and loss of earning capacity in his chosen profession.

137. Plaintiff is informed and believes and thereon alleges that the aforementioned acts of the defendants, including DOES 1-25, were willful, malicious, intentional, oppressive and despicable, and were done in willful, concious disregard and reckless disregard of the rights, welfare and safety of Plaintiff, thereby justifying an award of punitive and exemplary damages.

138. As a result of defendants conduct as alleged herein, Plaintiff is entitled to cost of suit and attorneys' fees pursuant to 42 U.S.C. section 1988 and California Code of Civil Procedure section 1021.5.

///
///
///
///
///
///
///
///
///
///
///
///

Count 2: The following Civil Right has been violated: The Right To Be Free From Cruel And Unusual Punishments As Set Forth In The Eighth Amendment And Made Obligatory Upon The State Of California, County Of San Diego By Virtue Of The Fourteenth Amendment To The United States Constitution Due To The Defendants Failure To Summons Immediate Medical Care By Contracting A U.C.S.D. Doctor At The Time Of The Plaintiff's Injury Resulted In Deliberate Indifference To The Plaintiff's Serious Medical Needs And Forced The Plaintiff To Suffer Unnecessary And Wanton Infliction Of Pain

139. The Plaintiff realleges and incorporates by reference paragraphs 1-138 in this verified complaint.

140. The Plaintiff is hereby alleging seperate aspects of the claim of deliberate indifference As this Court has previously authorized in Johnson v. Silva, 2011 U.S. Dist. LEXIS 88102 (S.D. Cal. July 13, 2011)(The Court allowed plaintiff to proceed on multiple aspects of claim of deliberate indifference and denying defendants motion to strike).

141. The defendants failed and has continued

-38-

to fail to summons immediate medical care
and is being deliberately indifferent to the
Plaintiff's serious medical needs causing the
Plaintiff to suffer unnecessary and wanton
infliction of pain in violation of the Eighth
Amendment's Cruel and Unusual Punishments
Clause made obligatory upon the State of
California, County of San Diego, by virtue
of the fourteenth Amendment to the
United States Constitution.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

Count 3: The following Civil right has been violated: The Right To Be Free From Cruel And Unusual Punishments As Set Forth In The Eighth Amendment And Made Obligatory Upon The State of California, County of San Diego, By Virtue Of The Fourteenth Amendment To The United States Constitution Due To The Defendants Intentionally Delaying The Plaintiff's Surgery Which Is Deliberate Indifference To The Plaintiff Serious Medical Needs And Forced The Plaintiff To Suffer And Continue To Suffer Unnecessary And Wanton Infliction of Pain

142. The Plaintiff REAlleges and incorporates by Reference paragraphs 1-138 in this verified complaint.

143. The Plaintiff is hereby Alleging seperate Aspects of the claim for deliberate indifference As this Court has previously Authorized in Johnson v. Silva, 2011 U.S. Dist. LEXIS 88102 (S.D. Cal. July 13, 2011)(the Court allowed plaintiff to proceed on multiple aspects of claim of deliberate indifference And denying defendants motion to strike.)

144. The Plaintiff hereby Alleges that this complaint complies with Rule 8 and this

verified complaint meets the pleading requirements
as set forth in *Evans v. County of San Diego,*
2009 U.S. Dist LEXIS 102248 (S.D. Cal. Aug.
19, 2009)(defendants delay in knee surgery);
*Shapley v. Nevada Bd. of State Prison*
*Coonies,* 766 F.2d 404, 408 (9th Cir. 1984)
(deliberate indifference to serious medical needs
in delay of surgery); and *McGuckin v. Smith,*
974 F.2d 1050, 1060 (9th Cir. 1992)(holding
that deliberate indifference may be
manifested "when prison officials deny,
delay or intentionally interfere with medical
treatment, or it may be shown by the way
in which prison physicians provide medical
care"), overruled on other grounds by, *WMX*
*Techs., Inc. v. Miller,* 104 F.3d 1133, 1136
(9th Cir. 1997)(en banc).

145. The defendant's intentionally delayed the
Plaintiff's surgery to save themselves cost
which resulted in deliberate indifference to
the Plaintiff's serious medical needs in violation
of the Eighth Amendment made obligatory upon
the State of California, County of San Diego, by
virtue of the Fourteenth Amendment to the
United States Constitution and caused the
Plaintiff to suffer unnecessary and wanton
infliction of pain.

Count 4: The following State Right has been violated: The Right to be free from The Negligent Acts Or Omissions Of All Named Defendants Under Provisions Of The California Tort Claims Act, Government Code Section 844.6(d)

146. The Plaintiff REAlleges and incorporates by reference paragraphs 1-138 in this verified complaint.

147. On or about February 23, 2013, defendants directed Plaintiff to sleep in the top bunk.

148. Plaintiff has a history of Parkinson's Disease, which the defendants had knowledge of from Plaintiff's extensive medical history. Plaintiff was given daily medication for the Parkinson's disease. Plaintiff suffered from involuntary seizures, as well as balance and coordination problems. The Plaintiff had several medical directives from contracted U.C.S.D. doctors that the Plaintiff was to be placed in a lower bunk, lower tier, at all times. The defendants disregarded these medical directives despite the Plaintiff's verbal and written pleas for a lower bunk. The Plaintiff was at George Bailey Detention Facility ("GBDF") were the top bunks are 7 feet high and the defendants knew the risk of placing the

-62-

Plaintiff in a top bunk. See Patterson v. County of San Diego, 2011 U.S. Dist LEXIS 7077 (S.D. Cal. Jan. 25, 2011)(inmate fell from 7 foot high bunk at GBDF requiring surgery).

149. Defendants knew, or should have known, that an inmate with Parkinsons Disease, along with the symptoms of the disease manifested and the medical state of Plaintiff should not be placed in the top bunk. Defendants knew, or should have known, that since the 7 foot high top bunk does not have a ladder to climb down on, that the Plaintiff would have problems climbing down from the top bunk given his medical conditions.

150. Defendants had direct medical orders from a U.C.S.D. physician to not place the Plaintiff in a top bunk. The defendants had a duty to not place Plaintiff in the top bunk as ordered.

151. It was reasonably foreseeable to the defendants that an inmate in the medical condition of Plaintiff could easily injure his bare foot while climbing down from the bunk.

152. It was reasonably foreseeable that when falling 7 feet from the top portion of the bunk that Plaintiff could fracture and seriously injure his bare foot.

153. During the fall Plaintiff sustained a LisFranc fracture to his left foot. Plaintiff's injuries from the fall are serious and permanent as set forth in this verified complaint.

154. As a result of defendants' negligence, Plaintiff has sustained non-economic and economic damages, as set forth in this verified complaint. Plaintiff's injuries are serious and ongoing.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

-64-

Count 5: The following civil right has been violated: The Right To Be Free From Cruel And Unusual Punishment As Set Forth In The Eighth Amendment And Made Obligatory Upon The State Of California, County Of San Diego By Virtue Of The Fourteenth Amendment To The United States Constitution Due To Forcing The Plaintiff To Sleep On The Top Bunk And Disregarding Doctors Orders For A Lower Bunk Which Resulted In Deliberate Indifference To The Plaintiffs Serious Medical Needs Which Ultimately Resulted In The Plaintiff To Suffer Unnecessary And Wanton Infliction of Pain

155. The Plaintiff realleges And incorporates by reference paragraphs 1-138 in this verified Complaint.

156. The Plaintiff realleges And incorporates by reference paragraphs 146-154 in this verified complaint.

157. The Plaintiff is hereby Alleging seperate Aspects of the Claim for deliberate indifference As this Count has previously Authorized in Johnson v. Silva, 2011 U.S. Dist. LEXIS 88102 (S.D.Cal. July 13, 2011)( the Court allowed plaintiff to proceed on multiple Aspects of

claim of deliberate indifference and denying
defendants motion to strike).

158. It was known to the defendants that
if they disregarded the doctors orders in
the Plaintiff's medical records that the
Plaintiff would eventually fall from the
top bunk breaking something in his body
as the defendants at George Bailey
Detention Facility have been allowed by
this Court to proceed with civil Rights lawsuits
against the defendants for falling out of the
top bunks at GBDF and breaking a
bone or hurting the prisoner plaintiff by
having to have surgery due to the fall from the
top bunk. See Patterson v. County of San
Diego, 2011 U.S. Dist. LEXIS 7097 (S.D. Cal.
Jan. 25, 2011)

159. The defendants failed to follow doctors
orders and was deliberate indifferent to the
Plaintiffs serious medical needs causing the
Plaintiff to suffer unnecessary and wanton
infliction of pain in violation of the Eighth
Amendment's Cruel and Unusual Punishments
Clause made obligatory upon the State of
California, County of San Diego, by virtue
of the fourteenth Amendment to the
United States Constitution.

Count 6: The following state law has been violated: The Plaintiff Has Suffered Medical Malpractice With The Defendants Who Knew Or Had Reason To Know That The Plaintiff Was In Need Of Immediate Medical Care But The Defendants Failed To Take Reasonable Action To Summons Such Medical Care In Violation Of California Government Code Sections 844.6(a), 844.6(d) And 845.6 Under The California Tort Claims Act

160. The Plaintiff REAlleges And INCORPORATES by REFERENCE PARAGRAPHS 1-138 in this verified Complaint.

161. The Plaintiff REAlleges And iNCorporates by REFERENCE PARAGRAPHS 146-154 in this verified Complaint.

162. The defendants in this CASE KNEW ON February 23, 2013 to present, or should have known that the Plaintiff was and still is in Need of immediate medical care And The defendants have failed And continue to fail to take REAsonable Action to summon such medical care in violation of California Government Code sections 844.6(a), 844.6(d), And 845.6 under The California Tort Claims Act.

163. The defendants are liable as public employees as the Plaintiff's Lisfranc fracture was and is serious and obvious medical conditions required and continue to require immediate care. See Watson v. California, 21 Cal.App. 4th 836, 841 (1993).

164. The Plaintiff alleges there are differences under the standard for medical malpractice against the defendants and the federal standard of "deliberate indifference." See Lucas v. County of Los Angeles, 47 Cal.App. 4th 277, 287-288, 290 (1996). This verified complaint meets both the state and federal standards.

165. As a direct result of the defendants' medical malpractice, the Plaintiff has sustained non-economic and economic damages, as set forth in this verified complaint. Plaintiff's injuries are serious, obvious, and ongoing.

///
///
///
///
///
///
///
///

Count 7: The following Civil Right has been Violated: The Right To Be Free From Cruel And Unusual Punishments As Set Forth In The Eighth Amendment And Made Obligatory Upon The State Of California, County Of San Diego, By Virtue Of The Fourteenth Amendment To The United States Constitution Due To Defendant County Of San Diego; Defendant Sheriff Gore; Defendant Dr. Earl Goldstien, County Sheriff's Medical Director; Defendant Barbara Lee, Medical Administrator; Defendant Captain Daniel Pena, Facility Commander of the San Diego Central Jail; Defendant Captain John Doe Madsen, Facility Commander Of The George Bailey Detention Facility; And Jane Doe Terry 2, Medical Supervisor of the San Diego Central Jail; Failure To Adequately Train Deputies And Medical Staff Which Resulted In Deliberate Indifference To the Serious Medical Needs And Forcing The Plaintiff To Suffer Unnecessary And Wanton Infliction Of Pain

166. The Plaintiff Realleges And incorporates by Reference Paragraphs 1-165 in This Verified Complaint.

167. The Plaintiff is hereby Alleging seperate

Aspects of the claim of deliberate indifference As this Court has previously Authorized in Johnson v. Silva, 2011 US. Dist. LEXIS 88102 (S.D. Cal. July 13, 2011)(the Court Allowed plaintiff to proceed on multiple Aspects of claim of deliberate indifference And denying defendants motion to strike).

168. Defendants County of San Diego; Sheriff Gore; Dr. EArl Goldstien, County Sheriff's Medical Director; BArbara Lee, Medical Administrator; Captain Daniel Pena, Facility Commander of the San Diego Central Jail; Captain John Doe Madsen, Facility Commander of the George Bailey Detention Facility; And Jane Doe Terry 2, Medical Supervisor of the San Diego Central Jail; have failed to properly train deputies And medical staff Registered Nurses which are herein referred to a DOES 1-25, to simply be Able to coordinate with U.C.SD Medical Center Foot Clinic, Dr. Alexandria Kay Schwartz M.D., orthopedic surgeon - who, According to medical records were Always Able to set A surgery date with DOE Registered Nurses At the San Diego Central Jail - but when the surgery date came, the defendant's Always used the excuse (Atleast A half A cozen to A dozen times) "transportation problems

Count 8: The following state right has been violated: The Right To Be Free From Cruel Or Unusual Punishment Under Article I, Section 17, Of The California Constitution As Proscribed In The California Bane Act, California Civil Code section 52.1(b)

172. The Plaintiff realleges and incorporates by reference paragraphs 1-171.

173. This Court has supplemental jurisdiction under 28 U.S.C. section 1367.

174. The California Bane Act, California Civil Code section 52.1(b) provides a right of action for individuals whose rights secured by the United States Constitution and California Constitution have been interfered with by another. See Reynolds v. County of San Diego, 84 F.3d 1162, 1170-1171 (9th Cir. 1996)("Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations" aff'd in part and rev'd in part on other grounds in Acri v. Varian Assocs., 114 F.3d 999 (9th Cir. 1999).

175. The Plaintiff fully incorporates herein the protections of the Eighth Amendment's Cruel And Unusual Punishments Clause, made obligatory upon the State of California, County

of San Diego, by virtue of the fourteenth Amendment to the United States Constitution.

176. Article I, Section 17, of the California Constitution provides: Cruel or unusual punishment may not be inflicted or excessive fines imposed. [New section Adopted Nov. 5, 1974].(Cal.Const. Art I, Sec. 17)

177. For All reasons set forth in this verified complaint, the defendants have deprived the Plaintiff of his right under Article I, Section 17, of the California Constitution And the defendants, and each of them, have interfered with the Plaintiff's Rights under the United States Constitution And California Constitution.

///

///

///

///

///

///

///

///

///

///

///

///

///

on criminal causes than those afforded by the Constitution of the United States. This declaration of rights may not be construed to impair or deny others retained by the people. [As Amended June 5, 1980. Initiative Measure] (Cal. Const. Art I, Sec. 24)

183. For all reasons set forth in this verified complaint, the defendants have literally forced the Plaintiff to suffer the imposition of Cruel or Unusual Punishment in violation of Article I, Section 24, of the California Constitution and the defendants further, and each of them, have interfered with the Rights under the United States Constitution and the California Constitution.

///
///
///
///
///
///
///
///
///
///
///
///
///

## X. Plaintiff's Jury Trial Demand

184. The Plaintiff hereby demands a trial by jury.

## XI Prayer For Relief

Wherefore, Plaintiff prays for judgment against defendants, and each of them, as follows:

(1) For general and compensatory damages, including mental anguish, post-tramatic stress disorder, severe emotional distress, Nightmares, humiliation, grief, pain and suffering, loss of enjoyment and quality of life, causing suicidal thoughts and other general damages according to proof;

(2) For special damages and economic damages in an amount according to proof, including but not limited to medical bills, including past, present and future bills, past and future lost wages, past and future lost earning capacity;

(3) For reasonable Attorney fees, costs and expenses, pursuant to 42 U.S.C. section 1988 and California Code of Civil Procedure section 1021.5;

(4) For punitive and exemplary damages as to

-78-

All individual defendants, and each of them, including defendants DOES 1-25, and each of them;

(5) For a declaration that the Acts and omissions described herein violate Plaintiff's Rights under the Constitution and laws of the United States;

(6) For a declaration that the Acts and omissions described herein violate Plaintiff's Rights under the Constitution and laws of the State of California;

(7) For a preliminary injunction ordering defendants the County of San Diego and the San Diego County Sheriff William Gore to release the Plaintiff at the time of his release from custody with the "Sunmark" brand wheelchair the Plaintiff is using while in custody; this request for this preliminary injunction is based upon the Plaintiff is a California Department of Corrections prisoner, CDCR No. F91270 who is serving a prison term in "local prison" under Assembly Bill 109; however, the wheelchair in the Plaintiff's possession is in good condition, the Plaintiff is indigent, and the wheelchair is a prescribed appliance under the Armstrong Remedial Plan. See Armstrong v. Davis, No. C94-2307CW (N.D. Cal. Jan. 3, 2001) section IV.F.4; Title 15

-79-

California Code of Regulations sections 3358(c); and 3190(i)(1); and once released from "local prison" the prisoner-Plaintiff should be allowed to take any prescribed health care appliances, Remedial Plan section IV.F.3. The Ninth Circuit has set a precedent holding that the state cannot avoid its obligations to provide accomodations to disabled inmates by contracting with county jails to house those prisoners. See Armstrong v. Schwarzenegger 622 F.3d 1058 (9th Cir. 2010). The state has contracted with the San Diego County jails to house their prisoners under AB109 so that the state can comply with the prisoner release order of 46,000 prisoners that was affirmed by the United States Supreme Court in Brown v. Plata, 09-1233 (2011). The Armstrong Remedial Plan is in full force and effect and applies to the Plaintiff and making the Plaintiff serve his term of imprisonment in "local prison" does not mean that defendant County and defendant Sheriff can release the Plaintiff on or about October 10, 2013 - like they did on April 15, 2013 - by taking away the Plaintiff's wheelchair and forcing him to walk on a broke foot. This Court should grant the preliminary injunction to release the Plaintiff with the "Sunmark" wheelchair he is confined to from

-80-

Morning to night - As will be the case once
the Plaintiff is released. The Plaintiff
respectfully request a granted injunctive
relief for the "Sunmark" brand wheelchair
And the defendants have wheelchairs that
Are falling apart or not working properly - so
due to no funds to have a broken wheelchair
fixed As that is what the Plaintiff will receive
from the defendants if the injunction does
Not specifically state the "Sunmark" brand
wheelchair the has currently in his possession
And has been using while in "local prison."
(8) For a preliminary injunction ordering
defendants to release Plaintiff with a 60 day
supply of All medications he is prescribed and/or
taking At the time of the Court's Order. This
request is Also respectfully made pursuant
to Title 15, California Code of Regulations
section 3355(d); and Wakefield v. Thompson,
177 F.3d 1160, 1164 (9th Cir. 1999).
(9) For cost of suit incurred herein;
(10) For prejudgment and post-judgment
interest according to Any applicable
provision of law;
(11) That all dispositive matters be determined
by A United State District Court Judge;
(12) Plaintiff requests a jury trial
(13) For such other And further relief As to
-81-

the Court deems just and proper.

Dated: 9-10-13

Respectfully Submitted,

*Shawn Woodall*

Shawn Woodall

Verification

State of California:

: SS

County of San Diego

I, Shawn James Allen Woodall, declare:
I am the Plaintiff in the above-entitled
action. I have read the foregoing Verified
Complaint and know the contents thereof.
The same is true of my knowledge, except as
to those matters which are therein Alleged on
information and belief, As to those matters,
I believe it to be true.
I declare under penalty of perjury under
the laws of the United States of America that the
foregoing is true and correct.

*Shawn Woodall*

Shawn Woodall

- 82 -

Shawn Woodall
13736743
P.O. Box 122952
San Diego, CA 92112-2952

Re: Woodall v. County of San Diego, et. al.,

Dear Clerk:

   I am in custody of the S.D. Sheriff's Department. Under 28 U.S.C. Section 1915(g) I have plead and shown in the enclosed Verified Civil Rights Action that I am in immediate danger of serious physical injury. If the Court intervenes right now I may save my foot from amputation And/or save me from committing suicide upon my release that is anticipated to be October 10, 2013. I severly broke my foot in the Sheriff's custody in February 2013 and I was released to walk on a fractured foot. I had serious thoughts of suicide then and I am currently in a wheelchair and if they take the wheelchair away again - as it is obvious they are not going to do the ordered surgery by surgeon Alexandria Kay Schwartz, M.D., at UCSD Medical Center - this time I will kill myself as the pain of walking my foot off slowly is too much for me to endure. I pray that you file and return a filed stamped copy of this letter and the following that I am submitting to you for filing;

(1) Motion And Declaration Under Penalty Of Perjury In Support Of Motion To Proceed In Forma Pauperis — With Account Activity Form submitted behind Motion but not stapled to Motion.

(2) Ex Parte Motion To Exceed Page Limitation Set Forth In Local Civil Rule 8.2.

(3) Plaintiff's Verified Complaint For Declaratory Relief, Monetary Damages, And For Preliminary And Permanent Injunctive Relief — Demand For Jury Trial — 42 U.S.C. Section 1983 Civil Rights Action
(In Package 1 of 2)

(4) [Proposed] Order To Show Cause And Notice To File Response To Request For Preliminary Injunction (In the Order I have requested the Court to issue an OSC for Also Non-Compliance with the defendants to Assist the Plaintiff - who is indigent - With meaningful Access to the Court in 1983 Civil Rights Litigation challenging the Conditions of Confinement - I have Request an Oral Argument hearing and my appearance by telephone under State Authority citations and

(5) Ex Parte Motion To Shorten Time Or Expedite The Proceedings In This Case Due To Immediate Serious Physical Injury By Plaintiff If Court

Does Not Decide Injunctive Relief Before Plaintiff's Release From Custody, S.D. Local Rule 7.1(e)(5)

(6) Exhibits In Support Of Plaintiff's Verified Complaint For Declaratory Relief, Monetary Damages, And For Preliminary And Permanent Injunctive Relief.

Please, I respectfully request a filed stamped copy of All documents returned to me - but at the very least, please send me back a copy of my Verified Complaint.
I pray you take All the pleadings, plus a #4 pleading - immediately before the Court.

(7) Ex Parte Motion Authorizing Plaintiff To File Compact Disc Containing Medical Records And Numerous Orthopedic Surgeons Orders Concerning Plaintiff's Lisfranc Fracture Of Left Foot.

Thank you for your time And may the Lord Bless You,
Also each package is marked - this is 1 of 2 and there is a 2 of 2 mailed        Sincerely,
herewith.

                                    Glen Woodell

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the informtion contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States inSeptember 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**
Shawn Woodall
13736743

**DEFENDANTS**
County of San Diego, et al.

**FILED**

2254

**FILING FEE PAID**
Yes      No

**IFP MOTION FILED**
Yes      No

**COPIES SENT TO**
Court      ProSe

SEP 17 2013

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                    DEPUTY

**(b)** County of Residence of First Listed Plaintiff   San Diego
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Shawn Woodall
PO Box 122952
San Diego CA 92112-2952

Attorneys *(If Known)*

**13CV2231 H KSC**

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

☐ 1 U.S. Government Plaintiff
☒ 3 Federal Question *(U.S. Government Not a Party)*
☐ 2 U.S. Government Defendant
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☒ 550 Civil Rights | | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 555 Prison Condition | **IMMIGRATION** | | |
| | ☐ 448 Education | ☐ 560 Civil Detainee - Conditions of Confinement | ☐ 462 Naturalization Application | | |
| | | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | | ☐ 535 Death Penalty | ☐ 465 Other Immigration Actions | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*
☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district *(specify)*
☐ 6 Multidistrict Litigation

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42:1983
Brief description of cause:
Prisoner Civil Rights

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions):*
JUDGE
DOCKET NUMBER

DATE
09/17/2013

SIGNATURE OF ATTORNEY OF RECORD
s/SKHoestenbach   *SK Hoestenbach*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

LEGAL MAIL

Package 1 o 2

Ndvss Woodall
37367 743
P.O. Box 122452
San Diego, CA 92112-2952

United States District Court
Southern District of California
333 West Broadway, Suite 420
San Diego, CA
92101

Nasler
09/16/2013
US POSTAGE
$03.32⁰
FIRST-CLASS MAIL
ZIP 92128
011D12602958



RECEIVED

SEP 17 2013

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY_____ DEPUTY

M#5570

Shawn Woodall
3736743
P.O. Box 12952
San Diego, CA 92112-2952

PRIORITY

United States District Court
Southern District of California
333 West Broadway, Suite 420
San Diego, CA

92101

Package 2 of 2

LEGAL MAIL

PRIORITY

PRIORITY

Master
09/16/2013

PRIORITY MAIL
Commercial Price

$11.05

ZIP 92123
011D12602956

RECEIVED

SEP 17 2013

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

XX HSS 70